(111 App. Div. 853)

## BLAIR v. HAMPTON et al.

(Supreme Court, Appellate Division, First Department. March 16, 1906.)

1. TRUSTS—UNAUTHORIZED LOAN BY TRUSTEE—CONSENT OF BENEFICIARY—EFFECT.

Where beneficiaries of a trust fund indorsed notes to secure an unauthorized loan by the trustee, their consent to the loan thus given does not render them liable to reimburse the other beneficiaries beyond the amount of their liability on the notes.

2. SAME—RATIFICATION OF ACTS OF TRUSTEE.

Where a trustee made an unauthorized loan with the consent of part of the beneficiaries, and on his accounting the other beneficiaries, after being duly served with notice, failed to make any objection to the loan, they cannot afterwards assert a liability of the beneficiaries consenting to it to reimburse the amount lost thereon.

3. JUDGMENT—MATTERS CONCLUDED.

Where beneficiaries of a trust indorsed notes given to secure the loans made by the trustee, and in an action against them the amount of their liability on the notes was fixed by the judgment, they cannot, on an accounting with the trustee, assert that the judgment included interest on the trust fund belonging to the life tenant, which she had waived.

4. TRUSTS—ACCOUNTING BY TRUSTEE—COSTS—EXTRA ALLOWANCE.

On an accounting by a trustee, an extra allowance of costs may properly be allowed the trustee.

5. SAME.

In an action by a trustee for an accounting, where the defendants were divided into groups litigating against each other, an extra allowance of costs to them out of the estate was improper.

Appeal from Judgment on Report of Referee, New York County.

Action by Charles H. Blair, as trustee of the estate of David Cargill, deceased, against Panola C. Hampton and another, impleaded with Andrew H. Cargill and others. From a portion of the judgment entered on the report of a referee, and from an order granting to the plaintiff an extra allowance of costs, defendants Hampton and another appeal. From an order granting an extra allowance of costs to the defendants, plaintiff appeals. Judgment modified, order granting extra allowance to plaintiff affirmed, and order granting extra allowance to defendants reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Henry A. Prince, for appellants.
Alexander S. Lyman, for plaintiff respondents.
Frederick R. Coudert, for defendant respondents.

HOUGHTON, J. The defendants are residuary legatees of the fund held in trust under the will of David Cargill, deceased. On the termination of the trust, the plaintiff brought this action to account and to charge the shares of defendants Hampton and Stearns with the amount of certain unauthorized loans made by former trustees to defendant Andrew H. Cargill, a co-beneficiary, on the ground that they consented to and participated in such loaning of the funds of the trust. During the trusteeship of Frederick A. Brown, and in 1892, the trustee loaned to Andrew H. Cargill out of the trust fund $20,000, taking his

note therefor indorsed by defendants Hampton and Stearns; and later in 1897 he loaned $1,800 more, taking therefor a note indorsed by defendant Stearns. Frederick A. Brown died, and Walston H. Brown was substituted as trustee, and in the years 1898 and 1899 he loaned from the trust fund to Cargill $13,200 more, upon two joint notes of Cargill, Hampton, and Stearns. The moneys were used by Cargill in establishing a ranch in California, which was owned by a corporation, and on the last loan to him he caused the corporation to give to the trustee a mortgage for the entire $35,000 which had been loaned to him. Walston H. Brown resigned as trustee, and this plaintiff was appointed in his stead, and an action was instituted in the superior court of the state of California for the foreclosure of this mortgage. Defendants Hampton and Stearns were made parties thereto, and judgment was asked against them for the full amount of the notes which they had severally signed or indorsed. They appeared, and interposed several defenses, including the statute of limitations, and on the 7th day of October, 1901, a judgment was rendered relieving them from liability as indorsers on the notes, aggregating $13,200 and interest. The real property was sold, and the proceeds of the sale applied, leaving unpaid of their liability thus established the sum of $3,435.80. On the death of trustee, Frederick A. Brown, and the appointment of Walston H. Brown as his successor, an accounting of the trust fund was had. In the account appeared the item "California ranch loan $21,800." All of the defendants signed an instrument duly acknowledged, ratifying, approving, and accepting the account containing this item, waiving every objection which might be made thereto, ratifying and approving the acts of the trustee therein set forth, and agreeing and consenting that, upon the turning over of the securities therein mentioned to the substituted trustee, the estate of the deceased trustee should be fully absolved from liability, and his bondsmen discharged. When Walston H. Brown petitioned the Supreme Court to be permitted to resign, and that this plaintiff be appointed, he annexed to his petition a statement of the securities held by him belonging to the trust fund, and among them appeared "California ranch loan $36,350," being the $35,000 loaned by him and by his predecessor, in the manner specified, with accumulated interest. On this petition the court appointed a referee to take and state the accounts of the retiring trustee, and, on the coming in of such report, made an order directing all these defendants to show cause why such report, inventory, and account should not be confirmed, and why the then trustee should not be discharged, and his bond canceled. This order was duly served by publication and mailing on all beneficiaries, and, no one appearing in opposition, a final order was made confirming the report and approving of the account, and discharging the trustee and his bondsmen.

There is no suggestion that every one connected with the estate did not understand that "California ranch loan" referred to the loan made to Andrew H. Cargill, and evidenced by his notes indorsed or signed by appellants, Hampton and Stearns. The referee found that the loan was made direct to Cargill, the trustee taking the notes referred to as security, and there is no proof that appellants, Hampton and Stearns, received any of the moneys. The appellants, Hampton and Stearns,

conceded, except as hereinafter considered, their liability for the amount of the deficiency established by the California judgment; being the sum of $3,435.80. The judgment, from which they appeal, however, charges them with liability, notwithstanding they were relieved therefrom by the judgment in the California court, upon the $21,800 of notes, and directs that, after the share of Andrew H. Cargill shall have been exhausted in satisfaction thereof, their shares shall be charged with the deficiency, and impounded for its payment. The theory upon which this recovery was had, and upon which it is sought to be sustained, is that knowledge that the trustee was making an improper loan, and consenting that he do it, was sufficient to charge them with liability to their co-beneficiaries for the loss which resulted, although they received none of the money, and there was no fraud on their part, nor any fraudulent connivance to deplete the trust fund; and this, notwithstanding they had given their notes as security, which were accepted by the trustee, and which he permitted to outlaw as against them, and notwithstanding, also, the approval of the investment by the other beneficiaries, and the discharge by them of the trustees from any liability therefor.

If the plaintiff is to be permitted to go behind the legal obligations which Mrs. Hampton and Mrs. Stearns gave in the form of notes, and disregard the amount which was adjudged to be due upon them by the California judgment, it must be upon the theory that they committed some wrong, with respect to the trust fund and towards their beneficiaries, which was not wiped out by that judgment, and which was not condoned or approved by the other beneficiaries themselves. On the facts established, we fail to see that they incurred any such liability. Eliminating all fraud, as we must, the worst light in which they stand is that they knew an improper loan was being made to Cargill, and assented to his receiving the money, and consented to sign his notes therefor, and thereby to bind themselves during the lifetime of the notes for repayment of the money. The loan was negotiated between Cargill and the trustee. They were asked to become liable on the notes as additional security. This amounted in law to no more than a forceful assent. The question is not one between a beneficiary and a delinquent trustee, where it is sought to charge him with loss upon an illegal or improvident loan. The present trustee did not make the improper loans; they came to his hands from the former trustees. If the delinquent trustee were accounting, undoubtedly Mrs. Hampton and Mrs. Stearns would be estopped from claiming that he should make good to them the loss arising from the improper loan, for he would have a right to say that they could not question its propriety because they consented to it. The rule of law between beneficiaries themselves is quite different from that existing between a beneficiary and a trustee. Residuary legatees are under no obligation to restore, in the absence of fraud or collusion, a trust fund which has been wasted by the executors. Mills v. Smith, 141 N. Y. 256, 36 N. E. 178.

Counsel upon both sides concede their inability to find an authority in which the precise question is decided. After considerable research, the one nearest in point in principle seems to be Raby v. Ridelegh, 7 DeG. M. & G. 104. There two life tenants prevailed upon the trustees to invest the trust in an unauthorized security, in order to obtain an

increased income. A loss of principal arose. The trustees were charged by the vice chancellor with this loss, and the life tenants were held liable to reimburse them for the whole amount. On appeal this decree was modified, and the life tenants were held responsible only for such amount as the trustees had in fact paid over to them; the decision going upon the theory that there was no independent liability, but only one to restore that which they had received through the improper acts of the trustees induced by them. Ehlen v. Mayor, etc., of the City of Baltimore, 76 Md. 576, 25 Atl. 917, relied upon by the respondents, is not in point. There, four of the five beneficiaries had consented to the transfer of stocks held in trust and released to the trustees, and four-fifths of the funds realized had been thereby wasted. It was very properly held that the beneficiary who did not consent should take the one-fifth that remained.

Our conclusion is that mere knowledge of, and consent to, an unauthorized loan by a trustee, on the part of a beneficiary, in the absence of fraud or collusion or the receipt of any of the money, is not sufficient to create a liability against him to reimburse his co-beneficiaries for such loss as may occur. But, if the rule be more stringent than we conceive it to be, there is another reason why the judgment cannot be upheld. The respondent defendants waived any objection which they might have had that the loan was not one authorized by law, or that it was improperly secured or improvidently made. They accepted the investments, and ratified the accounts of the deceased trustee, which included the $21,800 loan, and approved his acts, and released him from liability therefor by a formal instrument in writing. So, too, by failing to appear when the order was made discharging the retiring trustee, and to object that he had also made improvident and unauthorized loans, they must be deemed to have assented to the propriety of making them, and to have waived their illegality or the insufficiency of security. Parties of full age may arrange and settle and distribute an estate in which they are interested among themselves without any formal decree of the court, and such settlement and arrangement, in the absence of fraud or undue advantage, is binding. Matter of Wagner, 119 N. Y. 28, 23 N. E. 200; Matter of Hodgman, 11 App. Div. 344, 42 N. Y. Supp. 1004. A release to a trustee in respect to a breach of trust committed in the investment of trust funds operates as an acceptance of the securities in which the funds have been invested. Blackwood v. Burrows, 2 Con. & Laws, Rep. 459. A decree upon an accounting approving investments binds all parties to the proceeding, even though the investment be unauthorized by law. Matter of Denton, 103 N. Y. 607, 9 N. E. 490; Matter of Tilden, 98 N. Y. 434. A beneficiary may authorize his trustee to do what otherwise would be a breach of trust, or release and agree to hold him harmless for such an act after it is done. 2 Perry on Trusts (5th Ed.) § 851; Pope v. Farnsworth, 146 Mass. 339, 16 N. E. 262. The legal effect, therefore, of the ratification and of the order sanctioning the account of the retiring trustee was to make the investments, so far as the respondent defendants are concerned, legal and proper ones. It became the duty of the present trustee, as it had been the duty of the discharged trustees, to enforce their collection. To do this the plaintiff went to the courts

of California, and upon issue joined it transpired that the plaintiff could obtain judgment against defendants Hampton and Stearns only upon the two notes aggregating $13,200, because the former trustees had permitted the statute of limitations to run against the prior notes. These former trustees had both been released, not only from any liability that might arise out of their improper investments, but for any negligence because of failure to enforce the obligations which they had taken. They were the primary debtors.

The California judgment must be given due faith and credit, and by it is fixed the liability of the appellants, Hampton and Stearns, to the trust estate. The accounts of the trustees, which the defendant respondents accepted as true, stated that the liability was $35,000. On testing that question it was found to be only $15,000, and they are bound by that determination.

It is insisted that the deficiency established against appellants, Hampton and Stearns, by the California judgment is not wholly principal of the trust fund, but is made up, in part, of interest belonging to the life tenant, and which she had waived. If this were the fact, it was incumbent upon the appellants to see that the judgment so provided. We think they are bound by the amount thereby established as principal due from them to the trust estate, and cannot now question its correctness.

The court granted an extra allowance to the plaintiff and to the defendants appearing separately. The defendants were divided into groups, litigating against each other, and there is no reason why their counsel fees should be taken from the estate. The plaintiff was accounting, and the allowance to him was proper. In so far as the order appealed from grants an extra allowance to any of the defendants, it should be reversed.

The judgment appealed from should be modified by providing that there be deducted from the shares of appellants, Hampton and Stearns, on account of the loan to Andrew H. Cargill, the sum of $3,435.80 only, with interest thereon from the date of entry of final judgment in the California action, and, as so modified, affirmed, with costs of the appeal to them, payable out of the estate.

The order granting extra allowances should be reversed in so far as it grants allowances to the defendants, and affirmed as to the allowance to the plaintiff, without costs. All concur.