trary, I think the surrounding circumstances are such as to indicate that the witnesses in question were telling the truth.

If the money in question were the aggregate amounts of gifts inter vivos, which in my opinion they were, they might still be the subject of taxation, if made in contemplation of the death of the donor. Tax Law (Laws of 1909, c. 62, constituting Consol. Laws, c. 60) art. 10, § 220, subd. 4; Matter of Birdsall, supra; Matter of Palmer, 117 App. Div. 360, 102 N. Y. Supp. 236. The uncontradicted testimony, however, is that the making of the gifts in question extended over a long period of years, were not made while the donor was ill, or at or near the time of his death. I can find no testimony warranting me in finding that the contrary was the fact.

Under the circumstances, I reach the conclusion that the item of $1,899.80 on deposit in the Emigrant Industrial Savings Bank in the form as above indicated was the property of Maria A. Iffland, and the two items of $162.62 each deposited in the Bowery Savings Bank were the property of Maria A. Iffland and Elizabeth M. Iffland, respectively, and consisted of gifts made by the decedent to them during his lifetime, and thereafter handed by them to him from time to time to be deposited for them.

The order is therefore reversed as to the three items mentioned, and the report is remitted to the appraiser for compliance with the terms of the stipulation as hereinbefore set forth, and for correction as indicated.

Order reversed, and report remitted to appraiser.

---

(92 Misc. Rep. 339)

### In re BREWSTER (four cases).

### In re GIBSON'S WILL.

(Surrogate's Court, Kings County. November, 1915.)

1. COURTS ⬅200¼—JURISDICTION OF SURROGATE—EQUITABLE DEFENSES.

   Under Code Civ. Proc. § 2510, providing that the surrogate may determine all questions, legal or equitable, arising as to any matters necessary to be determined to make a full, equitable, and complete disposition of the matter, the Surrogate's Court had jurisdiction to consider equitable defenses to releases presented by petitioner, by virtue of which he sought to be relieved from his duty of accounting to the beneficiaries of several trusts.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 476, 477; Dec. Dig. ⬅200¼.]

2. CONSTITUTIONAL LAW ⬅48—DETERMINATION BY COURTS.

   The constitutionality of a statute will not ordinarily be determined by a court sitting in the first instance, but will be left for determination by an appellate court.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. ⬅48; Statutes, Cent. Dig. § 56.]

3. EXECUTORS AND ADMINISTRATORS ⬅462—ACTING IN DIFFERENT CAPACITIES —ADJUSTMENT OF ACCOUNTS.

   In a proceeding for the judicial settlement of the account of a general guardian and the account of an administrator of assets, it appeared that

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the assets with which both accounts were concerned came from the mother of the two respondents, who died leaving a will, under which an executor was appointed, and that the executor delivered the fund of his trust to the party now accounting, before he became guardian, trustee, or administrator with the will annexed. Thereafter, while both respondents were minors, accountant was appointed their general guardian, and later received letters of administration with the will annexed on the estate of their mother, and thereafter was appointed substituted trustee of the trust created by such will. Petitioner accounted in each of these capacities, displaying in each account the same items of receipt and disbursement, the same aggregate, and the same final statement. The will under which he was appointed a trustee contained a trust, implied, but distinct, under which the respondents were sole beneficiaries for a term and in remainder. The trust required that the fund thereof be used for the support of the respondents according to the discretion of the trustees of the fund. There was never a time when either respondent had any estate derivable from his mother of which the guardian could take charge, or any time when there was any property of any kind as to which the accountant, as administrator, had any possession or right of possession. At all times since the accountant had been concerned with the assets for which he accounted, the only person entitled to the custody and administration of such assets was the testamentary trustee. *Held*, that his account as trustee was therefore the only account requiring adjustment, and that his accounts as administrator with the will annexed and as guardian should not be settled.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1987; Dec. Dig. ☞462.]

Proceeding on the judicial settlement of the account of Eugene V. Brewster, as general guardian of Stanley V. Gibson, infant, etc. Decreed according to opinion.

Harry J. Sokolow, of Brooklyn, for accountant.

Bostwick & Thoms, of New York City (Laurence A. Sullivan and Theodore Du Moulin, both of New York City, of counsel), for objectants.

KETCHAM, S. [1] The petitioner presents releases by virtue of which he claims to be relieved from the duty of accounting to the beneficiaries of his several trusts. The jurisdiction of this court to consider equitable defenses to these releases is within the text of the statute. It is provided by section 2510 of the Code of Civil Procedure that the surrogate may determine all questions, legal or equitable, "arising between any or all of the parties * * * as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires."

[2] This court will not discuss the constitutionality of this enactment. While it is within the power, and sometimes within the duty, of a court sitting in the first instance to entertain a constitutional question, it is a rule of practical force, though resting only in judicial convenience and policy, that such questions shall generally be left to the more deliberate consideration of an appellate court. The views of Mr. Surrogate Fowler upon this subject must be adopted. In Matter of Thornburgh, 72 Misc. Rep. 619, 132 N. Y. Supp. 268, he says:

"But the transcendent power of declaring an act of the Legislature unconstitutional should never, in my opinion, be assumed by a court of first in-

stance, except possibly in rare cases involving life or liberty, and where the invalidity of the legislative act is apparent on its face. The exercise of a judicial power to declare acts of the Legislature void should, I think, be reserved to the graver courts of the state, in solemn session in banc, or held for the final review of such great questions. Otherwise the processes of the government may be disorganized by the action of a single judicial officer possessed of a little brief authority. Such an individual exercise of power tends to bring into contempt with the people an historic jurisdiction, approved by the wisdom of the greatest of mankind—a jurisdiction of fundamental importance to constitutional government when well exercised, and of most evil import when lightly exercised by a single judge, animated, perhaps, by some theory squaring with his own conceptions of government or polity. Doubtless the ultimate power to test the validity of legislative enactments by a solemn comparison with delegated constitutional powers is of supreme importance and the keystone of our political fabric. But the power and the exercise of the power are distinct. It is well known that the power of the American judiciary to guard the citizen against legislative violation of delegated authority to enact laws is not original, or a novelty in government, as often asserted. Nor is it a mere phenomenon or experiment. On the contrary, it is the result of political experience of long duration. In England a similar assertion of judicial power just missed a triumph. Lord Coke, in Dr. Bonham's Case, 8 Rep. 118a, cited several ancient cases in support of the inherent judicial power to pass on the validity of an act of Parliament; and a great judge, Hobart, Lord Chief Justice of the Common Pleas, in the reign of James I (Day v. Savage, Hobart, 87), used these memorable words: 'Even an act of Parliament, made against natural equity, as to make a man judge in his own case, is void in itself for jura naturæ sunt immutabilia, and they are leges legum.' The embarrassment of exercising such a judicial power in a monarchy, where judicial proceedings were theoretically before the King himself—coram rege ipso—caused it to miscarry in the end in England. But in the English colonies the power of the judiciary to determine an act of the colonial Legislature void as unconstitutional was very familiar to the framers of the federal Constitution. The judiciary articles of that Constitution and of the state Constitution were only an evolution and no artifice or innovation. The due exercise of so fundamental a principle of American government—one so vital to national existence—should not, I think, be invaded rashly, or degraded by an immoderate use in a court of first instance. For these reasons the surrogate would regard it as a breach of decorum for him to undertake to pass upon the validity of chapter 676, Laws of 1910. In this court the constitutionality of an act of the Legislature must be presumed for the sake of propriety, if for no other reason."

The reasoning which forbids adjudication by this court must with greater force restrain it from mere declamation, for if considerations of modesty and deference would be offended by decision, they would be violated by a discussion which could have no decretal end. Hence the jurisdiction which the statute confers must be loyally assumed.

The releases and other instruments asserted by the accountant must be disregarded. Probably upon merely legal grounds they are without present effect. The petitioner first files accounts in each of the four relations which he bears towards the respondents. In each of these his dealings with the fund are reported in detail, and the respondents are invited to attend the final settlement of accounts, in which many items of receipt and disbursement are tendered them for inspection and criticism.

After objections to these accounts are filed, without permission to amend, he files statements, drawn and verified in the form of accounts, which are made in his behalf as trustee and as administrator with the will annexed, alleging that no assets have come into his hands, and

others as guardian, emphasizing his claim of release, and annexing copies of the instruments upon which he relies. In Matter of Lyth, 32 Misc. Rep. 608, 67 N. Y. Supp. 579, Mr. Justice Marcus, then surrogate, held that executors, who had petitioned for the final settlement of their accounts, and cited all parties interested to appear upon the return day, could not be heard to interpose the statute of limitations after the appearance of parties and the filing of objections.

There is nothing said in the case cited as to the right of the executors to interpose the bar of the statute which does not apply in this case to the plea of release. But if the releases, and other instruments, be subjected to equitable scrutiny they must be avoided upon obvious grounds. Any claim that as to either of the respondents there was a ratification of any release must fail in the face of evidence, accepted by the court, that at the time when it is said that either of the beneficiaries acquiesced in a release previously made by him the person concerned was without knowledge of the facts material to the act of ratification.

[3] It becomes necessary to determine in which of the petitioner's capacities his accounts with the respondents are to be settled. The assets with which these accounts are concerned came from the mother of the two respondents, who died, leaving a will under which an executor was appointed. This executor delivered the fund of his trust to the present accountant before the latter had received any appointment as guardian, trustee, or administrator with the will annexed. Thereafter, and at a time when both respondents were minors, the accountant was appointed their general guardian. Later he received letters of administration with the will annexed upon the estate of the respondents' mother, and still later he was appointed substituted trustee of the trust created in the said will. In each of these capacities the petitioner accounts, displaying in each account the same items of receipt and disbursement, the same aggregates, and the same final statement.

The will under which he was appointed trustee contains a trust, implied, but distinct, under which the respondents are the sole beneficiaries for a term and in remainder. The trust requires that the fund thereof be used for the support of the respondents according to the discretion of said guardians, necessarily meaning the trustees of the trust. There has never been a time when either of the respondents had any estate derivable from his mother of which a guardian could take charge, and there has never been a time when there was any property of any kind as to which the accountant as administrator had any possession or right of possession. At all times since the accountant has been concerned with the assets for which he accounts, the only person entitled to the custody and administration of such assets has been the testamentary trustee.

It is in strict accordance with the legal truth that the accountant charges himself with the residue of the entire estate in his capacity as substituted trustee, and, while he says the same thing as to the same fund in his several accounts as guardian and administrator, it is easy to accept his avowal of a custody which is the only custody legally

possible, and to reject his contrary statement when the latter cannot be true. His account as trustee is therefore the only account which requires adjustment.

The petitioner charges himself with the body of the estate, and credits himself with administrative disbursements, without assigning or dividing them as between the beneficiaries. In schedule B of his account there are items both of principal and income, and in schedule C there are stated, without distinction, payments to the beneficiaries both of principal and income. This infirmity is not objected to by the respondents, and the account will be settled without distinction as to their respective interests, upon the assumption that they elect to dispose of their conflicting interests, if any, by personal agreement.

The issues presented by the main objections, dated November 6, 1914, are disposed of as follows:

The items enumerated in the respondents' objections numbered 1, 3, 4 and 5 are disallowed.

It cannot be successfully argued that paragraph 28 of the stipulation submitted is a waiver of the necessity of voucher or proof in support of disbursements.

Objection No. 2 is overruled. Objections 6 and 7 are in part withdrawn, and may well be entirely overruled, unless respondents desire to have a precise consideration of the principal and income accounted for.

There is no need to dispose of objections 8 and 9, which were only to the form of the fund for which the accountant will be charged in the decree.

The supplemental objections, dated June 2, 1915, made in behalf of Stanley V. Gibson, are disposed of as follows:

The second objection is sustained. The third objection is sustained, and will result in a charge in favor of the single objectant of $3,623 in excess of the sum in which the interests of the two beneficiaries are combined. This sum should bear interest at the rate of 6 per cent. from July 19, 1910.

No investment was made for the benefit of any of the accountant's trust of $4,200 with which he charges himself. The only finding which the evidence and presumptions yield is that it was part of the estate which he received from his predecessor in the trust, and which was managed by him from a time at least as early as April 19, 1904. He is chargeable with interest on this sum from the date last named, at the rate of 5 per cent. less, however, all sums with which he charges himself as for interest on the Meachan-Hyams mortgage.

The objectants are entitled to interest upon the balance found against the accountant from the date of the accounting to the date of the decree.

Proper decrees may be entered in all of the accountings.

Decreed accordingly.