Matter of the Judicial Settlement of the Account of Proceedings of Louis K. Ungrich, as Executor under the Last Will and Testament of Rosina Rennert, Deceased.*

(Surrogate's Court, New York County, June, 1921.)

*Executors and administrators — accounting — when beneficiary not bound by instrument releasing executor from loss by reason of investing trust funds in securities not authorized by law — the burden of proof is upon the fiduciary to establish the perfect fairness, adequacy and equity of the bargain, and if the proof is insufficient to meet this requirement the court must hold the case to be one of constructive fraud — equitable jurisdiction of Surrogate's Court — Code Civ. Pro. §§ 2490, 2510.*

PROCEEDING upon the accounting of an executor.

John H. Bolles, for executor.

Merkel & Merkel, for objecting legatees.

JOHN GODFREY SAXE, Referee. The objecting parties are the three children of George W. Rennert and Rosina Rennert, both deceased. Mrs. Ren-

---

* Published by request.—[REPR.

nert in her will appointed her husband and her brother, Louis K. Ungrich, to be her executors and trustees, and until Mr. Rennert's death in January, 1917, they administered her estate as executors, and since then Mr. Ungrich has continued the administration as surviving executor. In March, 1912, Mr. Rennert and Mr. Ungrich invested $10,000 belonging to the estate in receiver's certificates of the Thos. McNally Company. This investment was made in good faith, at the suggestion of William T. Horton, an officer of the Corn Exchange Bank, where the executors banked the funds of the estate. The counsel for executor has frankly conceded that it was not an investment authorized by law.

In April, 1917, after Mr. Rennert's death, the three objectors duly executed an instrument indorsed "Agreement and Inventory," whereby they approved all Mr. Ungrich's acts as executor, and released him generally. The counsel for the objectors has offered evidence which he conceives showed both actual and constructive fraud in the execution of this instrument. During the hearings neither counsel suggested that the Surrogate's Court did not have jurisdiction of the controversy; but counsel in their briefs have raised various jurisdictional questions and I should be obliged to determine them in any event, because the order appointing me expressly directs me so to do, and because jurisdiction cannot be conferred by consent. *Matter of Mondshain,* 186 App. Div. 528, 529.

The Surrogates Act of 1914 greatly enlarged the jurisdiction of the Surrogate's Court. Code Civ. Pro., §§ 2490, 2510. In addition to the powers conferred upon the court by special provisions of law it is given jurisdiction " to administer justice in all matters relating to the affairs of decedents and \* \* \* to try and determine all questions, legal or *equitable* \* \* \* as to any and all matters necessary to be determined in order to make a full, *equitable* and com-

plete disposition of the matter by such order or decree as justice requires '' (§ 2510), and, '' in the cases and in the manner prescribed by statute,'' to '' direct and control the conduct, and settle the accounts, of executors * * * '' (§ 2510, subd. 3); '' To enforce * * * the distribution of the estates of decedents; and the payment or delivery, by executors * * * of money or other property in their possession belonging to the estate '' (subd. 4), and '' to proceed, in all matters subject to the cognizance of his court, according to the course and practice of a court having by the common-law jurisdiction in such matters, except as otherwise prescribed by statute; and to exercise such incidental powers as are necessary to carry into effect the powers expressly conferred.'' § 2490, subd. 11. The courts in their earlier decisions were influenced by the words contained in section 2510, reading, '' in the cases and in the manner prescribed by statute,'' and were inclined to construe the new section somewhat strictly (*Matter of Holzworth,* 166 App. Div. 150; affd., 215 N. Y. 700; *Matter of Hermann,* 178 App. Div. 182; affd., 222 N. Y. 564; *Matter of Mondshain, supra*), but they more recently have given effect to the broad language used in the new act and have declared: '' The language is so comprehensive that * * * it sweeps away all constraints upon the surrogate's jurisdiction and the necessity of multiplying remedies in the distribution and transfer of a decedent's property to whomsoever it belongs or should be delivered. The policy of securing unity of administration of a decedent's estate should result in expedition and thrift, and demands varied and highly informed judicial capacities. The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy.'' *Matter of Coombs,* 185 App. Div. 312, 314; *Matter of Malcomson,* 188 id. 600. This court unquestionably has jurisdiction to settle the

executor's accounts, and I am clearly of the opinion that the broad terms of the act of 1914 and Mr. Justice Dowling's opinion in *Matter of Malcomson, supra,* fully justify me in proceeding to determine whether or not the objecting parties are bound by the instrument which they signed. See, also, *Matter of Dollard,* 74 Misc. Rep. 312; *Matter of Fox,* 166 App. Div. 718.

The objecting parties urge me to disregard this instrument, *first,* because it runs to Mr. Ungrich "individually and as executor," and does not expressly release him, "a trustee," and, *second,* because, as they contend, it was not executed under the conditions of good faith required of agreements between a fiduciary and beneficiaries.

So far as the form of the release is concerned, the cases of *Dority* v. *Dority,* 40 App. Div. 236, and *Matter of Taggard,* 138 N. Y. 610, affg. 41 N. Y. St. Repr. 796, on opinion of Landon, J., below, are without application. It was as trustees that Mr. Rennert and Mr. Ungrich had the right to make investments, but they assumed throughout to administer the estate as executors; and it is as executor that Mr. Ungrich is now accounting. Under these circumstances the instrument running to him individually and as executor would be as effectual a release and ratification of the illegal investment made by him and the objectors' father as an instrument running to him as trustee.

The objectors' second point raises the question of the binding effect of the agreement and inventory. At the time they executed it they were all of age. The two daughters were married. The son was a bright young man nearly twenty-two years of age, who had kept the books of the estate for six months after his father's death and knew that there had been a default in the McNally certificates. The daughters, before signing, read the annexed memorandum which expressly stated that the McNally certificates were

"past due, with interest from July, 1913." All three knew that litigation was pending in respect thereto. In this situation the objectors voluntarily executed this instrument and thereby agreed that the assets were accurately set forth in the annexed memorandum; released Mr. Ungrich individually and as surviving executor, and ratified and confirmed his each and every act. In the absence of fraud, such an instrument would fully release Mr. Ungrich as to his breach of trust committed in investing in the McNally certificates and would operate as an acceptance of the McNally certificates. *Blair* v. *Cargill*, 111 App. Div. 853, 858.

I will not analyze the evidence in so far as it relates to actual fraud. The record as a whole speaks for itself. I will merely state the executor impressed me as both honest and truthful and that he did not exhibit before me any of the characteristics of a fiduciary who would permit himself to deceive trustful relatives. I hold flatly that he did not make any false statements and that he did not intentionally withhold material information with any intent to perpetrate a fraud.

I am, however, of the opinion that I must disregard the release. The settled law of this state is that all agreements between a fiduciary and beneficiaries are to be looked upon with suspicion; that when a person standing in a confidential relation received a substantial benefit from beneficiaries the transaction is scrutinized with the extremest vigilance and viewed with the utmost jealousy; that the beneficiaries must have full knowledge of their rights and of all the facts and circumstances of the case, and that the burden of proof is upon the stronger party to show affirmatively that all was fair, open and well understood. The burden is on him of establishing the perfect fairness, adequacy and equity of the bargain, and if no proof be given, or if the proof be insufficient to meet this requirement, the court must hold the case to be one of constructive fraud. *Hatch* v. *Hatch*, 9 Ves.

292; 2 Perry Trusts (6th ed.) § 851; *Fish* v. *Miller,* Hoffm. Ch. 267, 278; *Nesbit* v. *Lockman,* 34 N. Y. 167, 169-170; *Adair* v. *Brimmer,* 74 id. 539, 554; *Wildey* v. *Robinson,* 85 Hun, 362, 365; *New York Life Ins. & Trust Co.* v. *Kane,* 17 App. Div. 542, 548; *Matter of Long Island Trust Co.,* 92 id. 1; affd., 179 N. Y. 520; *Kissam* v. *Squires,* 102 App. Div. 536, 543; *Matter of MacNeil,* 165 id. 842, 844; *Matter of Brewster,* 92 Misc. Rep. 339, 344; *Harrison* v. *Harrison,* L. R. A., 1916E, 854, note, p. 864.

Even from the executor's standpoint, and upon the undisputed evidence, the bargain in this case was the release of a liability for an illegal investment of $10,000, with accrued interest, in order to obviate the expenses of an accounting which would amount to only a few hundred dollars. The instrument in question was indorsed " Agreement and Inventory." While Mr. Ungrich himself was a layman, his counsel prepared the same. The objectors, while they were told that it was a general release, regarded it as a paper which it was necessary or expedient for them to sign in order to make it easy for the executor to continue the administration of the estate. Mr. Ungrich admitted that he knew that the effect of his nephew and nieces signing this instrument would be to relieve him from his obligation for this McNally investment but he did not say anything to them about the question of his personal liability as executor on account of that investment. " That question did not come up at all." The objectors did not understand that the executor was liable, in all events, for this investment as being an investment inhibited by statute; they merely questioned whether it was a good investment. The executor, in order to sustain this release, was bound to show, either that he did not know his own liability and accordingly that he gave the best information which he had; or, knowing that he was liable, that he informed them as to such liability. He has proved neither. On

the contrary it affirmatively appears that he knew his liability, but did not disclose it. It is therefore entirely clear that the proofs fall short of showing that all was fair, open and well understood. The question is whether this so-called "agreement and inventory" should be disregarded because of constructive fraud as distinguished from actual fraud, and a decision in favor of the objectors will undoubtedly work great hardship against their uncle, who made the investment, now challenged, as the joint investment of himself and the objectors' own father. This hardship is aggravated by the fact that the objectors do not seek to surcharge their uncle merely for one-half of the investment, but for the full amount thereof, with accrued interest, as, under the authorities they apparently have the right to do. *Wilmerding* v. *McKesson*, 103 N. Y. 329. Considerations involving hardship, however, must give way before authoritative decisions based on questions of policy, defining the duties of a fiduciary in making contracts with beneficiaries. Indeed, the reasoning of these decisions apply with much greater force to a release than to a direct gift. In the latter case the ward knows precisely what he bestows. The bounty is open. In the former the benefit covertly given is unknown and uncertain. *Fish* v. *Miller, supra.* So, whatever my convictions as to the question of hardship, I am constrained to disregard the agreement and inventory as vitiated by legal or constructive fraud.

Finally, I am of the opinion that the evidence offered by the executor in the stipulation of April fourth cannot avail him upon this accounting. I shall, however, overrule the objection to it, so that it will constitute a part of the record and be available to the executor, for what it is worth, in reviewing my decision before the surrogate.

The objection is sustained.

Objection sustained.