(165 App. Div. 842)

In re MacNEIL.

(Supreme Court, Appellate Division, Fourth Department.   January 6, 1915.)

1. PARTNERSHIP (§ 153*)—LIABILITY—MISAPPROPRIATION—ESTOPPEL.

A wife and a daughter of full age, having no interest in the property of the husband and father, except as heirs presumptive, who consented to defendant's appointment as committee for the husband's property, with the understanding that defendant's partner should have the custody and management of the property, were not estopped from holding defendant liable for misappropriation by his partner, unless, when consenting, they had full knowledge of all the material facts, and of the effect of their consent upon their legal and equitable rights.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 274–277; Dec. Dig. § 153.*]

2. INFANTS (§ 5*)—PROPERTY RIGHTS—ESTOPPEL.

In such case an infant son was not estopped by any consent he may have given while an infant, in the absence of ratification by him of the arrangement after he became of age with knowledge of the facts.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 5, 7; Dec. Dig. § 5.*]

3. INSANE PERSONS (§ 42*)—ACCOUNTING BY COMMITTEE—REVERSAL—NEW TRIAL ON QUESTION OF FACT.

On appeal from the final order for an accounting in a proceeding by a widow, as administratrix, against defendant, who had been the committee of the husband's property, held, on the evidence, that the case would be remanded for a new trial or hearing on the question whether the dealings of the defendant's partner, having custody and management of the prop- erty, and who had misappropriated it, amounted to notice to defendant, and called for affirmative action on his part.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 64–67; Dec. Dig. § 42.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Chemung County.

Petition of Eva A. MacNeil, as administratrix of Rufus R. MacNeil, deceased, for an accounting by Dix W. Smith as committee. From a final order adjudging him accountable·in a certain sum, Smith appeals.    Transferred from Third Department.    149 N. Y. Supp. 1095.    Order reversed, and new trial ordered.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

W. E. Knapp, of Elmira (E. J. Baldwin, of· Elmira, of counsel), for appellant.                                                        .

Richard H. Thurston, of Elmira, for respondent.

PER CURIAM.   We should have no difficulty in affirming the order appealed from, but for the fact that some of the findings made at the request of defendant are inconsistent with and may require a different conclusion from that reached by the court below in its decision.   By the findings so made at the request of the defendant it is found, in substance, that the defendant gave his consent to be appointed as committee on the understanding between himself and the petitioner and her two children that John Bull, Jr., should take entire charge of the estate and of the assets thereof, and do all the work, and that Smith should be relieved from all responsibility connected with the care of the estate, and should receive no compensation or commission as committee.

At this time Rufus R. MacNeil was the sole owner of the property now in question.   His wife, Eva, the petitioner, and daughter, Fannie, and son, Charles, who are now his sole next of kin, had no interest in such property, except·as heirs presumptive of their father. At this time the daughter, Fannie, was of full age; but the son, Charles, was not.   The petitioner, as administratrix, now· represents the rights of herself as widow, of her children, and of the creditors of her husband, if any there be.   It does not appear whether there are creditors of the husband or not.

[1] It is at least doubtful whether the evidence justifies a finding that petitioner, the wife, or either of her children, consented that John Bull, Jr., should have the custody of the principal of the estate or  . the securities in which such principal was or was to be invested, and it is not claimed that Rufus R. MacNeil, the husband and father, ever so consented.   But, if petitioner and her daughter did so consent, they would not be estopped from holding defendant, as committee, liable for the loss of the estate because of the misappropriation thereof by John Bull, Jr., unless at the time they gave their consent they had full knowledge of all the material facts, and were apprised of the effect of such .consent upon their legal rights, and were apprised of the law, and how these facts would be dealt with by a court of equity. 1 Beach on Modern Equity Jurisprudence, § 244.   Or, as it is put by another learned authority:

"The cestui que trust must have full knowledge of all the facts and circumstances of the case.   He must also know the law, and what his rights are, and how they would be dealt with by the court."   2 Perry on Trusts and Trustees (6th Ed.) § 851.

See, also, Adair v. Brimmer, 74 N. Y. 539.

It does not appear, from the findings made at the request of defendant, whether the petitioner and her daughter were informed that in case the funds and securities of the estate were placed in the custody of John Bull, Jr., and misappropriated and lost by him, that defendant, and the sureties upon his official bond, would be relieved from liability to them to make good the loss.

[2] As to the son, Charles, it is clear that he is not estopped by any consent he may have given while an infant, and there is no finding of any ratification by him of the arrangement since he became of age, with knowledge of the facts.

[3] We are of opinion, however, that we ought not upon this record to make a final disposition of this case. None of the exhibits are furnished to the court or printed in the record. The testimony of the son, Charles, seems to have been taken in the form of an affidavit; but it is not in the record. So far as we can judge from the testimony, the railroad bonds, of which the estate consisted at the time defendant was appointed committee, were soon thereafter sold, and the funds invested and reinvested from time to time in bonds and mortgages, all in the name of defendant, as committee. While defendant disclaims having had the custody of these mortgages, they were for many years kept in a safe in the offices occupied jointly by defendant and John Bull, Jr., who were both lawyers and for several years co-partners, and at some time Bull succeeded in making away with these mortgages or their proceeds. To accomplish this it would seem that he required in every instance the signature of the defendant to either an assignment or discharge of each separate mortgage. None of these documents were produced in evidence. Indeed, it is quite impossible to determine from the evidence when Bull began appropriating this estate to his own use, and over what period of time he was so engaged.

In view of the office and business association of the defendant and Bull, there is, we think, a further question, not fully gone into at the trial, as to whether Bull's dealings with the securities of the estate were of such a character as to amount to notice to defendant, and to have called for affirmative action on his part.

We think the order appealed from should be reversed, with costs to the appellant to abide the final award of costs, and that a new trial or hearing should be ordered at Special Term.