JAMES L. BRUFF and Another, as Administrators of the Estate of CHARLES A. BRUFF, Deceased, Respondents, *v.* ROCHESTER TRUST AND SAFE DEPOSIT COMPANY, Appellant.

Fourth Department, October 6, 1926.

Trusts — express trusts — construction — trust for benefit of man and wife provided for payment of income to wife — income was accumulated by wife and deposited in bank in her name — evidence shows that creator of trust intended that legal title to income should vest in wife subject to equitable right of husband to maintenance — income deposited in bank was not joint property of husband and wife — evidence shows agreement between husband and wife that income should be property of wife and that husband surrendered his equitable interest.

A trust was created for the benefit of decedent and his wife and a trust instrument provided for the payment of the income to the decedent's wife during her life. She deposited the income received from the trust in an income account in her own name. The legal title to the income paid over to the decedent's wife was in her and not jointly in her and the decedent, for it appears that the decedent, who had been an employee in different concerns in which the husband of the creator of the trust was interested, was a man of very little business judgment and had, while in business for himself, incurred many debts and seemed to be incapable of carefully handling and managing funds, and since it appears further that it was the desire of the creator of the trust that the income be devoted to the maintenance and support of both the decedent and his wife.

While the legal interest was in the decedent's wife, the decedent had, however, an equitable interest therein to the extent of his maintenance and support, but since it appears that he was able to support himself and his wife after the trust was made and that the income from the trust was kept intact, and in view of the financial history of the husband and the fact that during all the time that the income was paid to the wife he made no effort or attempt to interfere therewith, and in fact, on the death of his wife, treated the income as part of her estate, it is evident that an agreement was made between the decedent and his wife surrendering his equitable interest in the fund and, therefore, his administrators are entitled to no claim upon the money deposited in the bank.

CLARK, J., dissents, with opinion; TAYLOR, J., dissents in part, with opinion.

APPEAL by the defendant, Rochester Trust and Safe Deposit Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Monroe on the 9th day of September, 1925, upon the decision of the court rendered after a trial before the court, a jury having been waived.

*George H. Harris* and *Horace G. Pierce,* for the appellant.

*Arthur E. Sutherland* and *Carroll M. Roberts,* for the respondents.

SEARS, J.   On the 20th of January, 1910, Sarah L. Willis entered into a written trust agreement with the Fidelity Trust Company of Rochester, the predecessor of the defendant, by which she transferred to the trust company, as trustee, fifteen $1,000 bonds producing income at the rate of five per centum per annum.

The agreement recited the donor's desire to create a trust to provide an income for the support and maintenance of her friends, Charles A. Bruff and Ardelia Bruff, his wife, during their lives and ultimately to transfer the principal of such trust to three named corporate beneficiaries.   The income, according to the trust instrument, less commissions, was to be used and expended for the support and maintenance of Charles A. Bruff and Ardelia Bruff " during their joint lives, and thereafter for the support and maintenance of the survivor of them during the life of each such survivor."   The instrument then continued as follows: " While said Ardelia Bruff is living, such entire net income shall be paid over to her, except that if she and said Charles A. Bruff shall cease to live together as husband and wife, then such entire net income shall be divided between them and paid over to them or expended for their benefit, in equal parts."   The principal after the death of both Charles and Ardelia was to be transferred by the trustee to the three corporate beneficiaries.

Charles and Ardelia Bruff continued to live together as husband and wife until the wife's death.   The income was regularly paid by the trustee to Ardelia Bruff throughout her life.   All payments received by her, with one slight exception not material here, were immediately deposited with the trustee bank in an income account in the name of Ardelia Bruff.   On November 1, 1917, a few months before her death, $500 was withdrawn from this account for the purchase of a Liberty bond, the subscription for which was made through the trustee bank.   This bond was retained by Ardelia Bruff until her death and was evidently included in a legacy in her will.   The amount of accumulated income, with interest, remaining in the account with the defendant at the time of Ardelia's death was $6,199.56.

Ardelia Bruff died February 19, 1918, and from that time the income arising from the trust was paid by the trustee to Charles Bruff until his death on January 7, 1920.

The administrators of his estate now make claim to the deposit above mentioned standing in the name of Ardelia Bruff with the trustee bank on the theory that the unexpended income from the

trust fund was a joint account and fund which upon the death of Ardelia became vested in Charles, the survivor, as his absolute property. The defendant on the other hand contends that this deposit is a part of the personal assets belonging to the estate of Ardelia Bruff and must be distributed in accordance with her will, of which the defendant is executor.

In view of these conflicting claims, the question naturally arises — What was the intent of Sarah Willis, the donor, in creating this trust fund? It is quite clear that she desired both Charles and Ardelia Bruff to have some interest in the trust to the end that both might receive support and maintenance from its income during their joint lives and thereafter the survivor should have the entire income, and in the contingency that husband and wife should separate, the income should be divided between them. Did she, however, intend that the legal title to the income should be in both Charles and Ardelia Bruff, either jointly or in common (Ardelia being a bare custodian, agent or naked trustee in receiving payment) or, on the other hand, did she intend to vest the legal title in Ardelia subject to an equitable obligation to expend the amounts received both for her husband's and her own support? (*Ireland* v. *Ireland,* 84 N. Y. 321; *Oberndorf* v. *Farmers' Loan & Trust Co.,* 208 id. 367; *Shangle* v. *Hallock,* 6 App. Div. 55.)

The members of this court are not in agreement upon this question. A majority, however, are of the opinion that if the instrument does not clearly provide that Ardelia was the owner of the legal title to the income, there is at least an ambiguity in the trust agreement in this respect. Assuming such ambiguity to exist, it is permissible to examine into the surrounding circumstances to determine what was in the mind of the donor at the time she entered into the trust agreement.

Charles Bruff had been a bookkeeper and accountant and was employed for a long time by different concerns in which the husband of Sarah Willis and his brother Isaac were interested. Neither Charles nor Ardelia Bruff was related by blood to the Willis family. Their social relations were friendly. Bruff was not only the bookkeeper of the business concerns in which the Willis family was interested, but also kept the private books of different members of the family, including Sarah L. Willis, the donor, and Isaac Willis. Isaac Willis made some substantial provision in his will for Ardelia Bruff. Before the creation of the trust Charles Bruff had left the employ of the Willis concerns and engaged in business enterprises on his own account with signal lack of success. In 1898 a judgment for upwards of $5,000 was entered against him and a business associate. In 1900 another judgment

for about $3,000 was recovered against him and other business associates. And on January 24, 1910, four days subsequent to the date of the trust agreement, still another judgment for nearly $600 was docketed against him individually. The first judgment has never been satisfied of record, although a claim is made that it has been paid. The second and third remained unsatisfied until after his death. In September, 1913, another judgment for a smaller amount was entered against him.

In August, 1907, Sarah Willis made a will in which she provided for the creation of a trust of $15,000, the income to be paid to Ardelia Bruff during her life and after her death to Charles, if he should survive, with remainder over to certain other beneficiaries. In January, 1910, Bruff was apparently out of employment, had been unsuccessful in his business ventures, owed money, and with his wife was living at the home of his wife's mother. At this time Sarah Willis was nearly ninety years of age. Henry Willis, a son of her husband's brother Isaac, had been acting as her adviser for some years. He informed her of many of the conditions relating to the Bruffs which have been stated and it is probable that Sarah Willis, through her close acquaintance, was well informed as to Bruff's financial condition. Henry Willis advised Sarah Willis that if she did not need the income herself, it would be well for her to make the part of her will providing for the Bruffs operative at once by the execution of a trust agreement. At the same time he told her specifically that Charles Bruff had borrowed the money left by Isaac Willis to Ardelia, and that it had all been used up; that Bruff had been out of employment for a considerable time; that certain shares of stock which had been given to Bruff had been sold and the proceeds lost through an unfortunate investment; that he had very little money for the maintenance of himself and his wife; and that he was in debt. It was with this knowledge and upon this advice that Sarah Willis substituted the trust agreement for the provisions in favor of the Bruffs in her will. The fact must have been clearly established in her mind that if the Bruffs were to enjoy her gift, Charles was not the person to receive it. All the circumstances, therefore, confirm the view that it was the intention of the donor that so long as Ardelia Bruff and Charles A. Bruff lived together as husband and wife, Charles A. Bruff should not hold the legal title to any part of the trust income, but that the legal interest should be in Ardelia subject to the obligation to expend the income for the maintenance and support of herself and her husband, and we conclude that such is the construction to be given to the instrument.

The equitable right of Charles to support and maintenance out

of the income never ripened into a legal right to any part of moneys on deposit.

Subsequent to the creation of the trust, the financial condition of the Bruffs changed entirely. Bruff got employment and worked steadily at a substantial salary, so that his earnings together with the property obtained by Mrs. Bruff through inheritance from her mother, were sufficient to maintain husband and wife without expending any part of the income from the trust fund. Of course, the donor, Sarah Willis, contemplated the expenditure of the trust income, and the saving of it was a condition not provided for in the trust instrument.

The Bruffs then found themselves with two sources of income for their support. They could have used both, or one, or a part of both. They made choice of the trust fund for savings. This must have been by agreement between them. They were at liberty to divide the fund, to keep it as a joint item, or to give it to one or the other. The fact that it was deposited in the wife's name does not alone negative the existence of an agreement that it should be jointly owned. (*Matter of Klenk,* 165 App. Div. 917; affd., 214 N. Y. 715.) There is no direct evidence as to what the agreement was between them. We must seek the proof in the surrounding circumstances for it is inconceivable that the husband and wife did not talk over and agree upon the policy of diverting this money from the purpose for which it was provided. They were free to act as to all income received. The trustee had no discretion but to pay over the income to Ardelia, and when it was so paid over, the trustee's duties were done. (*Leggett* v. *Perkins,* 2 N. Y. 297.) The financial history of Charles, which we have found to be sufficient reason to induce the donor to put the legal title of the income in Ardelia so that she might spend it for the support of herself and husband, also furnishes an adequate ground for husband and wife to agree that the money should continue to belong to Ardelia. The continuing deposits of the income payments in Ardelia's name without interference on her husband's part, together with his treatment of the money as belonging to his wife's estate after her death, and the actual judicial settlement of her estate on that basis, point with sufficient certainty to the existence of such an agreement.

It is also significant that Ardelia Bruff made a will in which after certain legacies she gave the balance of her estate to a trustee to apply the income therefrom to her husband's support and maintenance during his lifetime with power to the trustee to apply the principal also to the same purpose if necessary. Aside from the deposit here in question Ardelia Bruff possessed at her death

personal property equal in amount to the deposit. This will adequately protected Charles in leaving the legal title to the moneys derived from the trust in Ardelia's ownership. It is just such a provision as would naturally have been agreed upon between husband and wife. It assured to the husband the full use of the property for his support and maintenance, safe from the demands of creditors and from improvident investment.

We reach the conclusion, therefore, that Charles voluntarily surrendered to his wife all his equitable interest in the fund and that his administrators are entitled to no claim upon the moneys deposited with the defendant bank.

The judgment appealed from should be reversed, certain findings of facts and conclusions of law disapproved and new findings made, and judgment directed for the defendant dismissing the plaintiffs' complaint, with costs.

HUBBS, P. J., and DAVIS, J., concur; CLARK and TAYLOR, JJ., dissent in separate opinions.

CLARK, J. (dissenting). I am unable to concur in the disposition about to be made of this case.

The plaintiffs are the administrators of the estate of Charles A. Bruff, a former resident of Monroe county, who died on the 7th day of January, 1920. His wife, Ardelia Bruff, died on the 19th day of February, 1918, leaving a last will and testament, which was duly admitted to probate in the Surrogate's Court of Monroe county.

The Fidelity Trust Company of Rochester was named as executor of said will, and it qualified as such and entered on the discharge of its duties. Subsequently the Fidelity Trust Company was merged with this defendant, the latter assuming the liabilities of the former and proceeding with its business.

Mrs. Sarah L. Willis, who had resided in Rochester many years, was an acquaintance and close friend of both Mr. and Mrs. Charles A. Bruff, and she desired to provide in a measure for their maintenance and support. To that end, on or about the 20th day of January, 1910, Mrs. Willis entered into an agreement with the Fidelity Trust Company, the predecessor of this defendant, to the effect that the said Willis " is desirous of creating a trust to provide an income for the support and maintenance of her friends, Charles A. Bruff and Ardelia Bruff, his wife, during their lives." To carry out that purpose Mrs. Willis transferred to the Fidelity Trust Company of Rochester fifteen $1,000 bonds, in trust, " to use and expend the net income of said bonds * * * for the support and maintenance of said Charles A. Bruff and Ardelia Bruff

during their *joint lives* and thereafter for the support and maintenance of the survivor of them during the life of each such survivor."

The said agreement further provided that while said Ardelia Bruff was living such income should be paid to her, except that if she and the said Charles A. Bruff should cease to live together as husband and wife, then such entire net income should be divided between and paid over to them, or expended for their benefit in equal parts.

Mr. and Mrs. Bruff lived together as husband and wife until the death of Ardelia Bruff, February 19, 1918, and the income from the trust fund was paid to her while she lived. None of this income was ever used, for the husband was supporting his wife and himself and the fund was kept on deposit in the wife's name until her death in the Fidelity Trust Company of Rochester, and at the time of her death it amounted to the sum of $6,199.56, made up exclusively of income payments from this trust fund.

It is the contention of plaintiffs that on the death of Mrs. Bruff her husband, as survivor, became entitled to this entire fund, they not having used it, and that plaintiffs, as his administrators, are entitled to receive it as part of his estate.

The defendant, on the other hand, contends that the husband never had any interest in this fund, and that it belongs to the wife's estate.

It will be observed that while the trust agreement provided that the net income derived from this trust fund was to be paid to the wife during her lifetime, it was for the express purpose of providing for the support and maintenance, not of the wife alone, but for the support and maintenance of both Mr. and Mrs. Bruff during their joint lives.

The intention of the donor must be found in the language of the trust settlement, and in the surrounding circumstances. It is clear that it was her purpose to provide for the support of the Bruffs jointly, or in case they separated, then there was to be separate support for each. The custodian of the fund is of no significance. It might have been a stranger. The right to benefit is the important element in determining where it was intended the title to the fund should vest. She contemplated the income would be spent, not saved. Likewise as between the Bruffs their intent as to the title of the savings depends upon the agreement they reached. They had two funds, one Bruff's earnings, the other the trust fund applicable to their support. They could have used both, or one or a part of both. They made choice of the trust fund for savings. This must have been by agreement between them. There is no direct evidence on the subject. We must seek it in the surrounding

circumstances, for it is inconceivable that a husband and wife would not have talked over the policy of diverting this money from the purpose for which it was provided. They were free to act. The trustee had no discretion but to pay it over. Why did they decide to accumulate a fund for emergencies from this source?

Bruff could have insisted on its use and saved his earnings in whole or in part. The other choice was made. It became possible by the use of Bruff's earnings for their support in lieu of the money provided for that purpose. They might just as well have put Bruff's money in the bank in a joint account; their interests were identical, and their purposes were to provide for the emergencies of the future.

The fact that Mr. Bruff was fortunate enough and sufficiently thrifty to support himself and wife comfortably without resorting to the trust income which they were saving against a time when perhaps the husband would be unable to provide support for himself and wife, should not be used to penalize him for supporting his family when he had the strength and ability to do so.

If it was not the purpose of the donor to vest the title of the income in Mr. and Mrs. Bruff, as joint owners while they lived together, why was it that she distinctly provided in the agreement that in case of their separation the income was to be separated, each to receive one-half? It seems to me clear that it was the donor's intention to provide for both her friends jointly while they lived together, and that there was no purpose to separate the income unless they should cease to live together as husband and wife — an event that never transpired.

Defendant urges that because on the 8th day of August, 1907, Sarah L. Willis had by the 8th clause of her will provided that the income from $15,000 of her estate should be paid to Ardelia Bruff during her natural life, and that after her death said income was to be paid to Charles A. Bruff during his life in case he survived his wife, its theory that the entire income under the trust agreement belonged to the wife is sustained.

I reach a different conclusion. By the will executed in 1907 Mrs. Willis provided that the income from $15,000 was to be paid to Mrs. Bruff during her natural life, but the purpose of said payments was not mentioned, and nothing was said about Mr. Bruff's having any interest in or benefit from such income so long as his wife lived.

By the trust agreement the donor specifically provided that the income from the trust fund therein referred to should be paid to Mrs. Bruff during her lifetime, but for a specified purpose, to wit, the support and maintenance, not of the wife alone, but

of her friends Charles A. Bruff and his wife Ardelia Bruff during their joint lives, and thereafter to the survivor of them. Mrs. Willis by the trust agreement enlarged and increased the interest of Mr. Bruff beyond the provisions of the will, for by the terms of the trust agreement he had a present interest in the income when paid for his maintenance and support, and it was not postponed until his wife's death, as it was under the terms of the prior will.

In my opinion, therefore, if the terms of the will throw any light at all on the intention of the donor under the terms of the trust agreement, it would be to strengthen the claim of plaintiffs to this fund, even though Mr. Bruff had been able to support himself and wife without resorting to the income that had been paid and accumulated.

Under the terms of the agreement he was entitled to his support out of the income all the time, and if he and his wife were able to live without it, owing to his industry and her economy, he may not thereby be deprived of what was jointly his with his wife the moment the income was paid. (*Holden* v. *Strong,* 116 N. Y. 471; *Rezzemini* v. *Brooks,* 236 id. 184.)

The trust was established for a specific purpose, viz., the support and maintenance of Charles A. Bruff and Ardelia Bruff, his wife, during their joint lives. During her lifetime the income was to be paid to the wife, but that clause of the trust agreement must be read in connection with the prior statement, that the income was to be used and expended for the support and maintenance of Mr. and Mrs. Bruff during their joint lives. The mere payment of the income to the wife during her lifetime did not give her title to the fund in view of the fact that there was a positive statement in the agreement that it was to be used for the support and maintenance of her husband as well as herself. She received the money from the trustee, not as her own, but in trust for the joint use of herself and her husband, and the fact that she deposited it in a bank in her own name did not operate to make it an individual instead of a joint fund. (*Matter of Klenk,* 165 App. Div. 917; affd., 214 N. Y. 715; *O'Connor* v. *Dunnigan,* 158 App. Div. 334.)

The beneficiaries, Mr. and Mrs. Bruff, took absolute title to the income (*Matter of Smith,* 86 Misc. 136; *Matter of Stanfield,* 135 N. Y. 292), and it being by the terms of the trust agreement designed for the maintenance and support of the beneficiaries during their joint lives, they took as joint tenants, and as one family, for the gift was intended for the joint support of Mr. and Mrs. Bruff. They had one estate in the fund, and the survivor took title to the accumulated fund on his wife's death. (23 Cyc. 488; 33 C. J. 903; 17 Am. & Eng. Ency. of Law, 649.)

The fact that the trust agreement provided that the income

should be divided in case the beneficiaries, husband and wife, should separate, justifies the inference that it was the intention of the donor that there should be a joint interest while they lived together.

Mr. Justice Stephens well says in his opinion in the court below (125 Misc. 579): "The provision for a separate interest in the event of their living separate, points to a joint interest while they were living together."

The case of *Hamilton* v. *Drogo* (241 N. Y. 401), relied on by defendant, does not support its contention. In that case the trustee had an absolute discretion to distribute income among some of or all of the possible beneficiaries mentioned in the trust agreement. When this discretion was exercised if any payments were made to the judgment debtor, one of the possible beneficiaries, it could be reached under a garnishee execution.

In this case Mr. Bruff was not merely a possible beneficiary but an actual beneficiary. This fund was established for the maintenance and support of both Charles A. Bruff and his wife, and not for the support of both, or either one of them, as the trustee might determine.

It is urged by the appellant that the plaintiffs are estopped from claiming any portion of the fund in question because their intestate was a party to the proceedings in the Surrogate's Court which resulted in the probate of his wife's will and the final judicial settlement of the accounts of her executors.

While Mr. Bruff knew the terms of the trust agreement, it is established that he never sought the advice of any counsel and he had no knowledge, so far as the evidence discloses, of the legal effect of the trust agreement, or of his rights thereunder. There is evidence that he had talked with the trust officer of the Fidelity Trust Company, the trustee, about the instrument but the conversations were with reference to the time when future income payments would be made, but the trust officer, Mr. Keyes, who had talked with Mr. Bruff, testified that he did not advise him as to his rights in regard to the accumulated income, or that he was entitled to it as the survivor of his wife, or that he had any interest under the trust agreement except that after his wife's death the income would be paid to him. It nowhere appears that he was advised by any lawyer as to his rights in the premises, and the trial court found as a fact that Mr. Bruff was never advised by the Fidelity Trust Company as to his rights in and to said deposit, and was never advised by said trust company that he was the owner of said deposit, or of any part of it, but on the contrary the court found that said Fidelity Trust Company represented to said Charles A. Bruff that said deposit was the exclusive property of Ardelia Bruff and became in its entirety part of her estate.

The court further found that Mr. Bruff relied on the advice of the said trustee with reference to any interest he had under the trust agreement.

He was clearly not acquainted with the law concerning his rights, if any, to this fund. The trust company in advising him knew, or was bound to know, the law and when it undertook to advise him at all it was its duty to advise him correctly as to his rights in the premises.

Under the circumstances the principle of estoppel will not preclude the court from awarding to the representatives of Charles A. Bruff a fund that belonged to him as the survivor of his wife, for there is no evidence that he ever consented to the absorption of this fund by his wife's estate with knowledge of his legal rights in the premises. (*Adair* v. *Brimmer,* 74 N. Y. 539; *Matter of MacNeil,* 165 App. Div. 842; *Matter of Ungrich,* 115 Misc. 762; 39 Cyc. 414.)

The claim of defendant that this was a spendthrift trust is not borne out by the evidence. While there was testimony offered by defendant to the effect that at the time the trust agreement was made there were two judgments docketed in the Monroe county clerk's office against plaintiffs' intestate and that thereafter two other judgments were obtained against him, it was clearly established on the trial, and without contradiction, that the largest judgment was recovered some twelve years before the trust agreement was made, and some nineteen years before Mrs. Bruff died, and over twenty years before the death of her husband.

There was no evidence that any effort had ever been made to collect this judgment, while there was ample evidence, and without contradiction, that an unrecorded discharge of that judgment was seen in Mr. Bruff's possession before his death.

Because of the lapse of time since this first judgment was recovered — more than twenty years before the death of the judgment debtor — and in the absence of proof that there had been some effort made in the meantime to collect it, and there being no proof that payments had been made to apply on the judgment and thus keep it in life, there is a legal presumption that the judgment had been paid and satisfied. (Civ. Prac. Act, § 44.) This presumption would confirm the testimony of Mr. Maloney that he had seen an unrecorded discharge of that judgment in Mr. Bruff's possession before his death.

As to the second judgment, it was obtained nearly ten years before the trust agreement was made, and was satisfied August 23, 1904 (long before the trust agreement was made), and has been discharged of record. The other two judgments were recovered against Mr. Bruff after the trust agreement was made, and both have been discharged of record by one of the administrators of

his estate to whom they had been assigned the same day they were discharged.

The evidence does not warrant the charge that Charles A. Bruff was a spendthrift, or that the trust agreement was intended to be a spendthrift trust.

From all the evidence it is my opinion that it was the intention of the donor that the beneficiaries named by her in the trust agreement should take the net income from the trust securities as joint tenants, and that the plaintiffs, as administrators of the estate of the surviving beneficiary, are not estopped from maintaining this action by reason of anything that he did or omitted to do in the premises.

The judgment should be affirmed, with costs.

TAYLOR, J. (dissenting in part). Whether this grant be covered by section 66 of the Real Property Law, which applies also to personalty, or whether it be a common-law proposition, there is a presumption that a tenancy in common in the income fund was created. (*Matter of Kaupper,* 141 App. Div. 54; affd., 201 N. Y. 534.)

The words " during their joint lives, and thereafter for the support and maintenance of the survivor " cannot be held to create a joint tenancy and a survivorship. The document does not say that the tenancy shall be joint, nor can such an implication be drawn from it. The expression " joint lives " was a convenient one, and one naturally selected to partially indicate the duration of the trust; that is, that it should exist while both the Bruffs were living, and upon the death of one should continue for the benefit of the survivor.

The document does not make provision for the support and maintenance of Charles and Ardelia according to their needs, *aut sim;* nor does it make the amounts distributable or the identity of the beneficiaries depend· upon the discretion or direction of any one. This distinguishes the case from *Hamilton* v. *Drogo* (241 N. Y. 401). The document directs that the whole income be used and expended for the support and maintenance of Charles and Ardelia. This shows a clear intention to set apart and give to the two beneficiaries sufficient for the support and maintenance of both to the end of their lives, so far as the income from the fund would reach, whether or not either Charles or Ardelia needed any of the money for the purpose mentioned. This reasonable intention is not rendered improbable by the fact that Sarah L. Willis could not have foreseen that this particular fund would not be utilized for living expenses. The fact that that specific money was not so used does not change the character of the transfer nor the intention of the donor.

Ardelia was made custodian, as well as a beneficiary, of the income, but not the sole legal owner. This view is strengthened by the provision for paying Charles' share directly to him in case of a separation of the spouses. The legal title, after each transfer of the income of the fund by the trustee, was in both Charles and Ardelia. Why in Ardelia alone? Surely not because of her custodial position. That was no more than a temporary arrangement, dependent upon the husband and wife continuing to live together.

Charles never asked for any of the fund for support and maintenance. Ardelia never used any of it for such a purpose. So they stand alike before the court. Failure to ask for or to use the fund for support and maintenance did not bar either from getting his (her) share. Reimbursement for money spent for support and maintenance by either Charles or Ardelia is permissible, as it was in *Matter of Sewell* (127 Misc. 202).

Taking into consideration all the attendant facts and circumstances mentioned in the prevailing opinion, including the contents of Ardelia Bruff's will, I cannot see that any of the acts, omissions or conduct of either of the Bruffs created any waiver or that they estop the representatives of either *cestui que trust* from claiming title to a part of this fund. The situation differs as to this from that found in *Ireland* v. *Ireland* (84 N. Y. 321) wherein discretion was conferred upon a trustee to " apply " moneys to the use and for the maintenance of beneficiaries. And barring such waiver and estoppel, however brought about, the character of the tenancy is controlled by the trust document.

Under the record which is before us, I think it should have been found that the total proceeds of the fund, during the time when Charles and Ardelia were both living, should be divided between their estates equally, or in proportion to the relative needs of each of them for support and maintenance while they lived together. (Additional proofs would be necessary as to " relative needs.") Charles received the total proceeds from the time of Ardelia's death, until his death, pursuant to the provisions of the trust document.

The presumption in favor of a tenancy in common has not been rebutted. If title to this income fund did not thus pass to these tenants, it did not pass at all; the donor's intention was not carried out. In that case I can see no other possible solution than that — since none of the money was used for support and maintenance — it should all go back into the principal fund.

A new trial should be had, with costs to abide the event.

Judgment reversed on the law and facts, with costs, certain findings of fact and conclusions of law disapproved and reversed, and new findings made, and judgment directed for the defendant, dismissing the complaint, with costs.