John D. Bennett, S.
The petition seeks an accounting and revocation of letters of administration issued to the respondent.
The administrator has brought on two motions seeking (1) dismissal of the petition on the ground that it does not state facts sufficient to constitute a cause of action; and (2) dismissal of the petition because of general releases allegedly executed by petitioner.
*687 A preliminary hearing was held on the issues raised by the petitioner’s answering affidavit attacking the general releases. At the hearing the respondent placed in evidence two releases, one running to him ‘ personally or in his capacity as Executor and/or Administrator ’ ’ of the estate of Giovanni Amuso, obtained shortly before his appointment as administrator, and a subsequent release releasing him as administrator, and the surety company. After placing these releases in evidence, the respondent rested. The petitioner then moved to strike out the defense of release. The precise issue was thus clearly presented as to whether the fiduciary has made out a prima facie case by proof of the execution of a general release to him from the cestui que trust without an affirmative showing of the circumstances under which it was obtained. Ordinarily the burden of pleading and proving fraud in obtaining a release is placed upon the party seeking to establish that fact (Foster v. Parker, 282 App. Div. 766; Piuntkosky v. Harrington’s Sons Co., 167 App. Div. 117; Lynch v. Figge, 200 App. Div. 92).
However in the Surrogate’s Court there appear to be two principles seemingly in conflict which have motivated the opinions which discuss the proof necessary to set aside a release or settlement under such circumstances.
The first line of oases stresses the importance of finality in litigation by means of releases and compromises, and the desire on the part of the courts to encourage agreements and settlements which in effect dispense with the expense and delay inherent in formal accounting proceedings (Fisher v. Fisher, 253 N. Y. 260; Matter of Pruyn, 141 N. Y. 544; Matter of Wagner, 119 N. Y. 28; Slater v. Slater, 208 App. Div. 567, affd. 240 N. Y. 557; Matter of Waters, 183 App. Div. 840; Minehan v. Hill, 144 App. Div. 854; Matter of Crowe, 139 Misc. 648; Matter of Voislawsky, 135 Misc. 877, 878).
In the other line of cases, the courts emphasize the high standard of conduct imposed upon a fiduciary in his relationship with a cestui que trust. This doctrine is discussed in Williston on Contracts ([Rev. ed.], Yol. 5, § 1625A, pp. 4542-4545): “ When such a relationship of dominance of one party exists, however, as is ordinarily the case where there is a fiduciary or confidential relation between the parties, the courts of equity hold that it raises a presumption of undue influence and throws upon the dominant party the burden of establishing the fairness of the transaction and that it was the free act of the other party. This principle has been generally applied to cases of settlements of property, especially gifts, rather than to contracts, but does not seem confined to such cases. It is applied *688 where a parent obtains a conveyance from a child, and also where a child has obtained a conveyance from an aged parent by means of an agreement to support. So an advantage obtained by a husband from a wife, or by one who stands in the position of a trustee from his cestui que trust, a guardian from a ward, whether legal guardianship exists or not, or by an attorney from a client, an administrator from a legatee ’ ’. This general rule has been stated with approval by the Court of Appeals in Cowee v. Cornell (75 N. Y. 91) and Doheny v. Lacy (168 N. Y. 213).
The essence of the fiduciary relationship was probably best described in Meinhard v. Salmon (249 N. Y. 458, 464), where Cakdozo, J., writing for the Court of Appeals said: “ Many forms of conduct permissible in a workaday world for those acting at arm’s length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to imdermine the rule of undivided loyalty by the ‘ disintegrating erosion ’ of particular exceptions ”.
In Matter of Schoenewerg (277 N. Y. 424), the Court of Appeals held that a cestui who obtained a full and fair statement of what had been done by the fiduciary, and thereupon signed a general release, has no standing thereafter to set such release aside on the grounds that there was an affirmative obligation on the part of the fiduciary to detail the open state of facts set before such cestui.
The determination of the precise issue by the Court of Appeals is not of any aid in the matter before this court, since in the Schoenewerg case (supra) there was admittedly an informal accounting setting forth all the facts which were given to the beneficiary. The precise holding there was that there was no additional burden on a fiduciary to point out where his account was subject to criticism. In the lower court’s decision (160 Misc. 819) Surrogate Delehanty was of the opinion that there should be a distinction between a fiduciary who is beneficially interested at the expense of the cestui que trust, in which event the rule which establishes presumptive fraud would be applicable, and a fiduciary without any beneficial interest, merely seeking a release on completion of his trust administration. This distinction appears to be logically subject to question, since all estate representatives are subject to being *689 surcharged and might be considered as interested or benefitted in avoiding any surcharge by obtaining a release from their obligations.
The issues, however, may be resolved without doing violence to any of the apparently conflicting rules discussed. Section 251 of the Surrogate’s Court Act states that a recorded release is presumptive evidence of its contents. There would seem to be no reason for distinguishing the prima facie effect of a recorded release from one not recorded. The burden of going forward with the evidence should then shift to the party attacking the release, since he is in as good a position as the representative to show what occurred at the time of the execution of the release. However, the court holds that the burden of proof on the whole issue remains with the fiduciary as to whether at the time of the execution of the release the beneficiary was fairly dealt with. This is consonant with general rules governing relationships between fiduciaries and cestuis and would be particularly applicable where, as here, the relationship between this administrator and petitioner is not only one of fiduciary and beneficiary, but the administrator as an intestate distributee of the decedent is also acting in his own interest. In a similar situation involving a fiduciary’s self interest, Surrogate Delehanty said in Matter of James (86 N. Y. S. 2d 78, 88):
“ The courts of this State have consistently invoked the rule that agreements between a fiduciary and a beneficiary are looked upon with suspicion and where the fiduciary makes a bargain with or receives a benefit from the other, the transaction is scrutinized with the most extreme vigilance and will not be upheld unless the beneficiary has been given full knowledge of his rights and of all the material facts and circumstances. Nesbit v. Lockman, 34 N. Y. 167, 169; Adair v. Brimmer, 74 N. Y. 539, 554; Wildey v. Robinson, 85 Hun 362, 364, 32 N. Y. S. 1018, 1019; New York Life Ins. & Trust Co. v. Kane, 17 App. Div. 542, 548, 45 N. Y. S. 543, 547; Gugel v. Hiscox, 138 App. Div. 61, 73, 122 N. Y. S. 557, 565, 566; Kissam v. Squires, 102 App. Div. 536, 542, 92 N. Y. S. 873, 876; Matter of MacNeil, 165 App. Div. 842, 844, 151 N. Y. S. 162, 163, 164; Matter of Fox v. Eagle Savings & Loan Co., 180 App. Div. 909, 167 N. Y. S. 1100; Matter of Ungrich, 115 Misc. 762, 766, 190 N. Y. S. 187, 190; Matter of Folmsbee’s Estate, 149 Misc. 426, 427, 268 N. Y. S. 309, 310, 311.”
Petitioner’s and respondent’s motions made at the end of the respondent’s case are denied and the hearing will continue on August 13. 1958. at 10:00 a.m.