*1071 OPINION OF THE COURT
John B. Riordan, J.
This is a proceeding by Norman LeoGrande, one of Joseph W LeoGrande, Sr.’s three children and the executor of Joseph W. LeoGrande, Sr.’s estate, to compel an accounting by Joseph W LeoGrande, Sr.’s other two children, Donald LeoGrande and Joseph W. LeoGrande, Jr., as trustees of a trust created by Joseph W. LeoGrande, Sr., as grantor, under trust agreement dated January 22, 1986. The cotrustees have opposed the application. For the reasons that follow, the petition is granted.
On January 22, 1986, Joseph W. LeoGrande, Sr. executed a trust agreement between himself, as grantor, and Joseph LeoGrande, Jr. and Donald LeoGrande, as cotrustees. The trust agreement provided that all of the income of the trust was to be paid to Joseph, Sr. during his lifetime. On Joseph, Sr.’s death, the trust was to be divided into two equal parts, with each part to be held in further separate trust for the benefit of Donald and Joseph, Jr., respectively. The purpose of the trust was to shield Joseph, Sr. from liability concerning environmental claims by the State of New York against corporate entities in which Joseph, Sr. had an interest. The trust was funded with, among other assets, Joseph, Sr.’s interests in Windsor Fuel, Rosselle Building Company, Inc. and Mineóla Fund.
On October 7, 1987, Joseph, Sr. commenced an action in the Supreme Court of Nassau County to overturn the trust alleging, among other things, fraud and undue influence on the part of Donald and Joseph, Jr. On October 17, 1991, a confidential settlement agreement resolving the litigation was executed by and between Joseph, Sr., Joseph, Jr., Donald and other interested parties. Pursuant to the terms of the settlement agreement, the trust would remain in existence and Joseph, Sr. would receive during his lifetime the net income of the trust less all expenses properly chargeable to the trust income. According to the petitioner, there was rampant hostility between Joseph, Sr. and Joseph, Jr. and Donald, as evidenced not only by Joseph, Sr.’s commencement of the action to set aside the trust, but also by the settlement agreement which included a specific provision that Joseph, Sr. would not interfere in Joseph, Jr.’s or Donald’s lives.
Moreover, as part of the settlement agreement, the parties also approved an intermediate account for the trust which covered the period from January 22, 1986 through September *1072 30, 1988 and a supplemental intermediate account which covered the period from October 30, 1988 through December 31, 1990. With regard to the account for the period January 22, 1986 through September 30, 1988, the parties entered into an additional separate stipulation specifically approving the intermediate account. The intermediate account was then approved by order of the Supreme Court dated December 4, 1991. In connection with the settlement, Joseph Sr. also executed general releases on October 30, 1991 to each of Donald and Joseph, Jr. in their capacity as trustees of the trust and individually. The releases provided that Joseph, Sr. released Donald and Joseph, Jr. for claims through October 30, 1991, the date of the release.
The settlement agreement, in pertinent part, provided as follows:
“WHEREAS, it is the express intention of the parties to avoid further legal fees and expenses by resolving all of the disputes between and among them, and to settle, compromise and merge into this Settlement Agreement any and all past or present claims, known or unknown, which Defendants have or may have against Joseph LeoGrande, Sr. and any and all past and present claims, known or unknown, which Joseph LeoGrande, Sr. has or may have against the Defendants, from the beginning of the world through the effective date of this Settlement Agreement, so as to effect a complete resolution of actual or potential disputes between the above-referenced individual and entities; . . .
“9. Joseph LeoGrande, Sr. will receive the net income from the Trust for life less all expenses properly chargeable to Trust income. For each fiscal year subsequent to 1990, an accounting of the Trust income performed by the independent accounting firm of Joel E. Mitchell & Company and a check for that amount will be delivered to Joseph LeoGrande, Sr. by the subsequent March 15. . . .
“13. This Settlement Agreement is to be executed in full and final settlement of all past and present claims between the Defendants and Joseph LeoGrande, Sr. and shall constitute a waiver by each of them of the right to assert any such claim in any action or proceeding against the other party. In the event of any breach of any provision of paragraphs 10 and 11 hereof, the parties shall have the immedi *1073 ate right to seek, ex parte, a court order to enforce the injunctive relief set forth therein. Additionally, any action brought as a result of any breach of this Settlement Agreement, either in whole or in part, shall be limited solely and exclusively to matters arising under this Settlement Agreement and shall not be based on the underlying claims of the Trust, Pension or Assault Actions.”
Thus, the settlement agreement required annual income accountings to be provided to Joseph, Sr. by March 15th of the following calendar year. The cotrustees have submitted an affidavit from a representative of the accounting firm which prepared the annual accountings stating that, in compliance with the settlement agreement, an annual accounting, tax returns and a check for the net income were personally delivered by her to Joseph, Sr.’s residence on March 15th of each year from 1990 until April 2001, the year of Joseph, Sr.’s death.
The trustees have opposed the application for a compulsory accounting first on the grounds that Norman has brought the petition in his individual capacity and not as executor of Joseph, Sr.’s estate. They argue that Norman, therefore, is not a proper party to the proceeding since he is not a beneficiary of the trust. Furthermore, the cotrustees contend that petitioner, even as executor of Joseph, Sr.’s estate, is not entitled to an accounting of the trust for the period January 22, 1986 through December 31, 1990 in view of the settlement agreement, the execution of the general releases and the Supreme Court order of December 4, 1991. Finally, the cotrustees claim that, by virtue of accepting the annual accountings and based upon the parties’ intention as expressed in the settlement agreement, Joseph, Sr. implicitly waived any and all rights to a judicial accounting for the period 1991 until the date of his death.
The petitioner, in reply, argues that he is acting in his capacity as executor of the estate and that any reference to him in the petition as a “beneficiary” of the trust is merely a scrivener’s error. In addition, petitioner does not dispute that the estate is not entitled to an accounting for the period January 22, 1986 through December 31, 1990. At issue, therefore, are only the accountings for the years 1991 through the decedent’s date of death. As to the period after 1991, petitioner claims that Joseph, Sr. did not waive, either expressly or implicitly, his right to a judicial accounting.
*1074 Standing
Concerning first the issue of standing, the court notes that the petitioner was issued letters testamentary as executor of Joseph, Sr.’s estate by decree of this court dated November 26, 2001. As executor of the deceased income beneficiary’s estate, petitioner has standing to compel an accounting. SCPA 2205 (2) (b) provides that a “person interested” in the estate may petition the court for a compulsory accounting. A “person interested” includes a person entitled or allegedly entitled to share as beneficiary in the estate (SCPA 103 [39]) and “the fiduciary of a deceased person interested” (SCPA 2205 [2] [e]). Although Norman is not a beneficiary of the trust, he is nevertheless “a person interested” and, therefore, has standing to petition for a compulsory accounting. Accordingly, the court deems the petition as having been brought by Norman in his capacity as executor of Joseph, Sr.’s estate.
Settlement Agreement
With respect to the cotrustees’ argument that petitioner is not entitled to a judicial accounting because the settlement agreement, together with the releases, were intended to completely resolve any and all actual or potential disputes between the parties, the court recognizes that it is well settled that stipulations are favored by the courts and will not be set aside lightly (Hallock v State of New York, 64 NY2d 224 [1984]; Matter of Stark, 233 AD2d 450 [1996]; Matter of Slaughter, 206 AD2d 537 [1994]; Matter of Kaplan, 150 AD2d 687 [1989]; Matter of Hecht, 24 AD2d 1001 [1965]). Stipulations are especially favored where the parties have been represented by counsel (Matter of Stark, 233 AD2d 450 [1996]; Heimuller v Amoco Oil Co., 92 AD2d 882 [1983]). Stipulations of settlement which put an end to litigation promote efficient dispute resolution and are essential to the litigation process (Hallock v State of New York, 64 NY2d 224 [1984]; Gage v Jay Bee Photographers, 222 AD2d 648 [1995]; Matter of Kanter, 209 AD2d 365 [1994]). Nevertheless, since a stipulation of settlement is a contract between the parties (Gage v Jay Bee Photographers, 222 AD2d 648 [1995]; Matter of Quade, 121 AD2d 780 [1986]), the court may, in its discretion, relieve a party from a stipulation upon a showing of those grounds necessary to avoid a contract such as fraud, collusion, mistake or accident (Matter of Marquez, 299 AD2d 551 [2002]; Gage v Jay Bee Photographers, 222 AD2d 648 [1995]; Matter of Slaughter, 206 AD2d 537 [1994]).
*1075 In the instant case, the litigation to overturn the trust lasted a number of years and was strongly contested by both sides. Both Joseph, Sr. and the cotrustees were represented by counsel in the proceeding and in the settlement negotiations culminating in the execution of the settlement agreement and releases. Nevertheless, the language of the settlement agreement is clear as to the parties’ intention. According to the settlement agreement, it was the express intention of the parties to settle any and all “past and present claims, known or unknown” and “to effect a complete resolution of actual or potential disputes” concerning those claims. The court finds that the parties intended that the settlement agreement was only to cover actual or potential disputes concerning past or present claims which existed through the date of the settlement agreement. Moreover, it is significant that, although the settlement agreement provided that Joseph, Sr. was to receive annually an accounting of the trust income, the settlement agreement did not specifically provide that Joseph, Sr. waived his right to a judicial accounting by the cotrustees.
Effect of Annual Accountings
Alternatively, the cotrustees claim that, even if the settlement agreement does not preclude a compulsory accounting, by virtue of accepting the annual accountings and not requesting any additional information concerning those accountings, Joseph, Sr. implicitly waived the right to a judicial accounting which is now binding upon Norman as the fiduciary of his estate. Petitioner does not deny that Joseph, Sr. received the annual income accountings each year. Instead, he argues that, since Joseph, Sr. did not sign a release in connection with any of the annual accountings, his estate now has the right to an accounting.
It is well settled that a fiduciary has a duty
“to make complete disclosure of all relevant data pertaining to the estate (see, Matter of Rappaport, 96 NYS2d 741, 743 [1950]; see also Matter of Grove, NYLJ, June 27, 1989, p. 23, col. 1) and to render a full and accurate account of his proceedings as fiduciary (see, Matter of Donner, 82 NY2d 574; Matter of Lasser, NYLJ, March 13, 1996, p. 30, col. 5)” (Estate of Gunther, NYLJ, Jan. 11, 2002 at 22, cols 2, 3).
*1076 A fiduciary may settle his account, however, by an out-of-court informal accounting and “such an informal accounting is as effectual for all purposes as a settlement pursuant to a judicial decree” (In re Kahn’s Will, 144 NYS2d 253, 254 [1955], affd 2 AD2d 893 [1956]). “[0]nce a party has signed a receipt and release, he is bound by its terms” (Estate of Torres, NYLJ, June 30, 1998, at 27, cols 5, 6; see also Matter of Voislawsky, 135 Misc 877 [1924]; Estate of Leyden, NYLJ, Mar. 2, 1995, at 30, col 6; Estate of Gutwirth, NYLJ, May 5, 1995, at 30, col 2). An agreement to discharge the fiduciary and settle an account will be binding provided “(1) all interested parties who would be necessary parties in a judicial proceeding settling the account sign the agreement; (2) the fiduciary has made full disclosure of his proceedings in an account circulated to all signatories to the agreement; and (3) all signatories to the agreement are competent adults” (Estate of Gunther, NYLJ, Jan. 11, 2002, at 22, col 3). Failure to make full disclosure will nullify the release (In re Gee’s Estate, 46 NYS2d 662 [1943]; Matter of Amuso, 13 Misc 2d 686 [1958]). If the agreement is made fairly and without coercion, fraud or undue influence, the executor cannot be compelled to account (In re Kahn’s Will, 144 NYS2d 253 [1955], affd 2 AD2d 893 [1956]; Estate of Gunther, NYLJ, Jan. 11, 2002, at 22, col 2; Estate of Leyden, NYLJ, Mar. 2, 1995, at 30, col 6).
“The accounting party, however, cannot rely solely on the release and he bears the burden of establishing that the beneficiary was dealt with fairly in obtaining the release (Matter of Amuso, 13 Misc 2d 686 [1959]). This would typically be done by submitting the informal account on which the release was based” (Estate of Leyden, NYLJ, Mar. 2, 1995, at 31, col 1).
The court finds that the annual income accountings provided to Joseph, Sr. were for informational purposes only and that Joseph, Sr.’s receipt of these accountings absent a corresponding release covering the period of the accounting did not serve to discharge the cotrustees. It appears that the income accountings provided to Joseph, Sr. were similar to the annual statements required to be provided to an income beneficiary pursuant to SCPA 2306. Simply by receiving the annual income accountings, Joseph, Sr. did not implicitly waive the right to a judicial accounting. An implied waiver has been defined as a deliberate and informed abandonment of known rights (Matter of Heubach, 165 Misc 196 [1937]; *1077 Estate of Smith, NYLJ, May 20, 1999, at 33, col 2). The court is not persuaded by the cotrustees ’ claim that they offered to give more information to Joseph, Sr., but he refused. In support of their allegation, the cotrustees have submitted a letter dated March 14, 1988. That letter, however, relates only to information concerning Joseph, Sr.’s pension fund and predated the settlement agreement. The offer to provide additional information had nothing to do with the trust. Moreover, the cotrustees’ argument that Joseph, Sr. deliberately and knowingly waived his rights to a judicial accounting is belied by a letter dated September 23, 1988 submitted by petitioner which demonstrates that the cotrustees had concerns regarding Joseph, Sr.’s capacity.
Accordingly, the cotrustees are directed to file their account for the period commencing October 31, 1991 through the date of Joseph, Sr.’s death. In addition, petitioner argues that the co-trustees should be directed to include in their accounting the transactions of Windsor Fuel for the accounting period. Petitioner alleges that, because of their strained relationship with their father, Donald and Joseph, Jr. embarked on a plan to minimize the income generated by Windsor. The petitioner alleges that Donald and Joseph, Jr. declared a “trivial dividend of $20.00 per share” while pillaging Windsor by paying themselves large salaries and using corporate funds to pay their personal expenses.
Joseph, Sr. originally owned a 51% stock interest in Windsor Fuel, which he transferred to the trust. At the time of transfer, Joseph, Sr. was president of Windsor, chairman of the board of directors and the majority stockholder. In 1980, Joseph, Sr. exercised a first option to purchase all of the shares of Windsor owned by his brother, Charles. Joseph, Sr. simultaneously assigned his rights of purchase to Donald and Joseph, Jr. Donald and Joseph, Jr. thereafter allegedly forced a sale of the remaining shares, thereby giving them in their individual and fiduciary capacities a 100% ownership in Windsor. In Matter of Hubbell (302 NY 246, 254 [1951]), the Court of Appeals held that where the trustees own, in their individual and representative capacities, the entire outstanding stock of a corporation, their fiduciary duty extends not only to the trust but also to the operations of the corporation. Accordingly, Donald and Joseph, Jr. are accountable for the administration of the corporate affairs of Windsor Fuel.
*1078 For the foregoing reasons, the cotrustees are directed to file an account of their proceedings as cotrustees, including the transactions of Windsor, for the period commencing October 31, 1991 (the date after the execution of the general releases) through the date of Joseph, Sr.’s death.